UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SALLY BEST,

                      Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

                      Defendant.

**DECISION AND ORDER**

1:17-CV-00795(JJM)

---

        This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [9, 11].[1] The parties have consented to my jurisdiction [13]. Having reviewed the parties' submissions [9, 11, 12], the Acting Commissioner's motion is granted, and plaintiff's motion is denied.

**BACKGROUND**

        Plaintiff had surgeries in July 2011 to repair a ligament and tendon in her right ankle (Administrative record [7], pp. 282-84), and in November 2011 to treat plantar fasciitis and a heel spur in her left foot. Id., pp. 304-05. Thereafter, plaintiff continued to treat for complaints of foot pain, and also began treating for complaints of low back pain. Id., pp. 322, 324. In August 2012, plaintiff filed an initial application for DIB (id., pp. 191-92), and in connection

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

with that application, Samuel Balderman, M.D., a consultative examiner, diagnosed plaintiff on October 12, 2012 as being "[s]tatus post right ankle surgery" and "[s]tatus post surgery for plantar fasciitis on the left foot", and determined that she had a "[m]ild to moderate limitation in prolonged walking or standing due to foot pain". Id., p. 333. At that time, Dr. Balderman's exam showed that plaintiff had "full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally" in her lumbar spine. Id., p. 332.

The initial application for DIB was denied on October 19, 2012. Id., pp. 114-17. On December 6, 2012 Jeffery Burch, PT conducted a functional capacity evaluation which determined that plaintiff was able to function at the sedentary level "for a recommended 4-hour workday due to her current level of deconditioning and demonstrated aggravation of foot pain with prolonged weight bearing activity". Id., p. 359.

In November 2013 plaintiff, who was 46 years old at that time, filed a second application for DIB, alleging a disability onset date of June 3, 2013, claiming that she suffered from chronic foot pain, "[s]evere nerve damage in both feet", that she was "[u]nable to stand for 10 min[ute]s", and that her "[f]eet go numb and cause [her] to fall when walking". Id., pp. 193-96, 229. After plaintiff's claims were initially denied (id., pp. 120-23), an administrative hearing was held on June 20, 2016 before Administrative Law Judge ("ALJ") Joan Deans, at which plaintiff, who was represented by counsel, and a vocational expert testified. Id., pp. 74-99. In a July 14, 2016 decision, ALJ Deans determined that plaintiff's severe impairments were "status post right ankle surgery, status post surgery for left plantar fasciitis, plantar fasciitis, mild degenerative disc disease, mild right ankle arthritis, and obesity". Id., p. 60.

ALJ Deans assessed plaintiff with the residual functional capacity ("RFC") to perform sedentary work,[2] with "additional nonexertional limitations of occasional climbing of ramps and stairs, balancing, kneeling, stooping, crouching, crawling, and use of foot petals [*sic*] to push and pull, and no climbing of ladders, ropes or scaffolds". Id., p. 62. In reaching that RFC, ALJ Deans gave "great weight" to Dr. Balderman's opinion, and "accorded weight" to physical therapist Burch's opinion that plaintiff was capable of sedentary work, but found "no objective support for an abbreviated workday". Id., p. 67.

Based on the RFC and other factors, ALJ Deans determined that although plaintiff was unable to perform her past relevant work, there were sufficient jobs in the national economy that she could perform, and therefore concluded that plaintiff was not disabled from June 3, 2013, her alleged onset date, through July 14, 2016, the date of the decision. Id., pp. 68-69. The Appeals Council denied plaintiff's request for review (id., pp. 41-46), and thereafter she commenced this action.

**ANALYSIS**

**A.      Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

---

[2]      "A residual functional capacity of sedentary work requires that a claimant be able to lift or carry up to ten pounds, stand or walk two hours, and sit six hours within an eight hour work day." Saviano v. Chater, 152 F.3d 920 n. 1 (2d Cir. 1998).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Acting Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

In seeking judgment on the pleadings, plaintiff argues that ALJ Deans' RFC is not supported by substantial evidence to the extent that it relies on the stale opinions of Dr. Balderman and physical therapist Burch, and that it was impermissible for ALJ Deans to otherwise interpret the bare medical findings in formulating the RFC. Plaintiff's Memorandum of Law [9-1], pp. 13-18. In response, the Acting Commissioner argues that there was no deterioration in plaintiff's condition that rendered the opinions of Dr. Balderman and physical therapist Burch stale, and that even if those opinions were stale, "[u]ltimately, no doctor - not even the one who treated her after Dr. Balderman and Mr. Burch provided their opinions - specified limitations beyond those found by the ALJ". Acting Commissioner's Brief [11-1], pp. 10-15.

**B.    Did ALJ Deans Impermissibly Rely on Stale Medical Evidence?**

"The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y. 2018); Cruz v. Commissioner of Social Security, 2018 WL 3628253, *6 (W.D.N.Y. 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition"). *See also* Pritchett v. Berryhill, 2018 WL 3045096, *8 (W.D.N.Y. 2018) ("[i]f a claimant's status regarding her impairments undergoes

'*significant* deterioration' after a consultative examination, the examination may not constitute substantial evidence" (emphasis added)); Andrews v. Berryhill, 2018 WL 2088064, *3 (W.D.N.Y. 2018) (same). "A medical opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically . . . after the opinion demonstrates substantially similar limitations and findings." Pritchett, 2018 WL 3045096, *8.

Prior to the 2012 opinions of Dr. Balderman and physical therapist Burch, plaintiff was treating for back and foot pain. [7], pp. 322, 324 While plaintiff continued to receive treatment for those ailments during the subsequent approximately four-year period, continuation of treatment, standing alone, does not render the opinions stale. *See* Palistrant v. Commissioner of Social Security, 2018 WL 4681622, *6 (W.D.N.Y. 2018) ("[j]ust because the claimant continues treatment after an opinion is rendered, however, does not mean that the opinion is stale"). The relevant issue is whether plaintiff's condition *deteriorated* during that period.

Though plaintiff sustained injuries in two falls in January 2014 and February 2015 ([7], pp. 356, 380) and a motorcycle accident in August 2015 that resulted in rib and clavicle fractures (id., p. 14), there is no evidence that her conditions deteriorated, much less significantly so, after the 2012 opinions. Significantly, at the time plaintiff was being treated for the motorcycle accident, she denied any chronic or ongoing health problems. Id., p. 12. Even after the motorcycle accident, there was little change in her prior condition. In March 2016, Phillip DeVore, D.O., her treating physician throughout, noted that she had some low back tenderness that she complained radiated down the side of her right leg to her toes. Id., p. 404. However, an April 1, 2016 x-ray of the lumbar spine revealed "[n]ormal alignment", [n]o acute compression deformity", and "[s]uspect[ed] mild degenerative facet change L4 and L5". Id., p. 406.

Based on plaintiff's continued complaints of foot and low back pain, Dr. DeVore referred plaintiff in May 2016 to Mark Krahe, D.O. of Orthopaedic & Sports Medicine of Erie, PC, for evaluation, but he found that she was in no acute distress and that x-rays of her ankles were negative for fracture, dislocation, and subluxation. Id., p. 395. While Dr. Krahe noted that plaintiff had an "antalgic gait" (id.), that also existed in 2012. *See, e.g.*, id., pp. 346, 407. Although Dr. Krahe also noted that plaintiff had "some degenerative changes though the midfoot", his overall impression was merely that she was "a 58-year-old female". Id., p. 395.[3] This is also consistent with the diagnostic tests, which found no more than mild anomalies. For example, the April 27, 2016 x-rays of her feet found "[m]ild arthritic changes" in her right foot (id., p. 411), and an "[u]nremarkable appearance of the left foot". Id., p. 409. Likewise, the May 2016 electromyogram study ordered by Dr. Krahe found that "mild or early peripheral neuropathy" could not be excluded, but that "all remaining studies remain well within normal parameters". Id., p. 400.

  ALJ Deans' decision discussed much of the medical evidence post-dating the 2012 opinions, including these specific portions of the record. Id., pp. 65-66. As the Acting Commissioner notes, plaintiff's treating doctors did not assign or recommend any restrictions, let alone restrictions more limiting than the RFC reached by ALJ Deans. Acting Commissioner's Memorandum of Law [11-1], p. 13. Since plaintiff did not experience a deterioration in her condition since the 2012 opinions, I conclude that ALJ Deans did not rely on stale evidence in formulating the RFC.

---

[3]  Dr. Krahe had plaintiff's birth date as a being in 1957, rather than 1967, as some of the other records indicate.

## CONCLUSION

For these reasons, the Acting Commissioner's motion for judgment on the pleadings [11] is granted, and plaintiff's motion [9] is denied.

**SO ORDERED**.

Dated: March 13, 2019

                                                      /s/ Jeremiah J. McCarthy
                                                      JEREMIAH J. MCCARTHY
                                                      United States Magistrate Judge